**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| CINNAMON RIDGE CONDOMINIUM ASSOCIATION, INC., | : | |
| | : | |
| | : | Case No. 3:22-cv-118 |
| Plaintiff, | : | |
| | : | Judge Thomas M. Rose |
| v. | : | |
| | : | Magistrate Judge Peter B. Silvain, Jr. |
| STATE FARM FIRE AND CASUALTY COMPANY, | : | |
| | : | |
| | : | |
| Defendant. | : | |

**ENTRY AND ORDER GRANTING, IN PART, AND DENYING, IN PART,
MOTION FOR SUMMARY JUDGMENT AND TO AMEND THE COMPLAINT
PLAINTIFF REQUESTS ORAL ARGUMENT (DOC. NO. 20), AND DENYING
DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY'S MOTION
FOR SUMMARY JUDGMENT (DOC. NO. 21)**

This insurance dispute is presently before the Court on cross-motions for summary judgment, filed by Plaintiff Cinnamon Ridge Condominium Association, Inc. (the "Association") and Defendant State Farm Fire and Casualty Company ("State Farm").

The Association has submitted a Motion for Summary Judgment and to Amend the Complaint Plaintiff Requests Oral Argument ("Plaintiff's Motion") (Doc. No. 20). The Association insured sixteen residential buildings through State Farm in 2020. (Doc. Nos. 1 at PageID 2; 4 at PageID 9.) In May of 2020, a weather event caused damage to the roofs of the Association's properties. (Doc. No. 10-2 at PageID 237.) Now, Plaintiff's Motion argues that State Farm must pay to fully replace select Association roofs rather than to repair them. (Doc. No. 20 at PageID 353-57.) Because the Association believes that State Farm has no reasonable justification for continuing to deny any obligation to replace the roofs, the Association has also

1

requested that it be granted leave to amend its complaint to include allegations of bad faith.  (*Id.* at PageID 357-58.)

On the other hand, State Farm has filed Defendant State Farm Fire and Casualty Company's Motion for Summary Judgment ("Defendant's Motion") (Doc. No. 21).  In short, State Farm claims the Association cannot meet its burden of proof and, as a result, State Farm is entitled to judgment as a matter of law.  (Doc. No. 21 at PageID 383.)

For the reasons discussed below, the Court **GRANTS, IN PART, AND DENIES, IN PART,** Plaintiff's Motion, and **DENIES** Defendant's Motion.

### I.      BACKGROUND

This case stems from an insurance agreement between the Association and State Farm.  (Doc. Nos. 1 at PageID 2; 4 at PageID 9; 10-2 at PageID 176-215.)  The Association is a common interest community organization responsible for representing the interests associated with a series of properties in Green County, Ohio.  (Doc. No. 1 at PageID 1.)  State Farm, likely well known to many, is an insurance company doing business in Ohio.  (Doc. No. 4 at PageID 9.)  On a date not yet specified, but before January 1, 2020, the Association purchased an insurance policy (the "Policy") from State Farm for the 2020 calendar year.  (Doc. Nos. 1 at PageID 2; 4 at PageID 9.)  Under the Policy, the Parties agreed that State Farm would insure the Association's properties against various causes of loss, including wind and hail.  (Doc. No. 10-2 at PageID 198.)  The Policy further provided that if the Association suffered a covered loss, State Farm would pay for replacement costs, but not more than the least of the following amounts:

1) The Limit Of Insurance under **SECTION I – PROPERTY** that applies to the lost or damaged property;
2) The cost to replace, on the described premises, the lost or damaged property with other property of comparable material, quality, and used for the same purpose; or
3) The amount that you actually spend that is necessary to repair or replace the

2

lost or damaged property.

(*Id.* at PageID 194.)

On May 10, 2020, a wind-related weather event caused damage to the sixteen buildings making up the Association's common interest community.  (Doc. No. 10-2 at PageID 237.) Specifically, the winds caused some degree of damage to the shingled roof of each building.  (Doc. Nos. 10-2 at PageID 217-33, 239-54; 20-3 at PageID 363-64.)

In the following three months, the Association submitted an insurance claim to State Farm for the wind damage caused.  (Doc. Nos. 1 at PageID 2; 4 at PageID 10; 10-2 at PageID 237.) After State Farm inspected the Association's property on September 22, 2020, State Farm found that the Association had suffered a covered loss under the Policy.  (Doc. No. 10-2 at PageID 237-38.)  Additionally, State Farm's insurance adjuster received an industry report (ITEL) to determine whether there were any shingles available to match the undamaged shingles on the Association's properties.  (Doc. Nos. 9-1 at PageID 158-59; 10-2 at PageID 311-12.)  That ITEL report found that the Association's current shingles are no longer manufactured, but suggested the closest match.  (*Id.*)  The closest match identified in the report was a perfect match in every way except for color.  (*Id.*)  Nevertheless, ITEL did suggest that the weathered gray replacement shingles were substantially similar in color to the Association's current roof shingles.  (*Id.*)  Ultimately, State Farm determined that the replacement shingles were sufficient to repair only the damaged portions of the Association's roofs and valued the Association's loss at $75,273.27.  (Doc. No. 10-2 at PageID 237-38.)

Meanwhile, the Association hired a roofing contractor, Feazel, Inc. ("Feazel"), to estimate the replacement cost value of the Association's loss.  (*Id.* at PageID 216-34.)  Feazel utilized the same information as State Farm's adjuster but seems to have determined that the Association's

current roofs could not be repaired.  (*Id.*)  Instead, Feazel recommended that each of the

Association's roofs receive a full roof replacement to accommodate the weathered gray shingles

identified by ITEL.  (*Id.*)  Feazel thus estimated the amount of the Association's loss to be

$789,825.65.  (*Id.* at PageID 234.)

In light of this disagreement as to the value of the Association's loss, the Association

contacted State Farm on May 4, 2022, demanding an appraisal pursuant to the Policy.  (Doc. No.

10-2 at PageID 273.)  State Farm, however, refused to submit to an appraisal because it contended

that appraisal was not appropriate or otherwise applicable to the Association's claim.  (Doc. No. 4

at PageID 10.)  Immediately thereafter, on May 5, 2022, the Association filed the instant Complaint

alleging causes of action for breach of contract (Count One) and declaratory judgment (Count

Two).  (Doc. No. 1 at PageID 2-3.)

On August 30, 2022, the Association filed its Motion to Compel Appraisal and Stay

Litigation (Doc. No. 7).  In briefing the issue, the Parties disagreed as to whether an appraisal was

warranted in this case.  (Doc. Nos. 7; 8; 9; 10.)  In particular, State Farm took issue with the

Association's contention that the Parties actually disagreed on the amount of the Association's

loss.  (Doc. No. 9 at PageID 146.)  Rather, State Farm argued that the Association's demand for

full roof replacements for purposes of achieving a reasonably comparable appearance

demonstrated a disagreement as to the scope of repairs.  (*Id.* at PageID 146-53.)  In the end, the

Court ordered an appraisal whereby the Parties' selected appraisers and a neutral umpire would:

> [S]eparately calculate and identify disputed costs—including damaged property as
> well as undamaged property whose replacement Plaintiff may claim if necessary
> for appearance purposes—so that the Court can either include or exclude them once
> it has determined whether the policy provides coverage for them.

(Doc. No. 11 at PageID 315.)

The ordered appraisal was completed on January 3, 2024, and an appraisal award was

issued.  (Doc. No. 18 at PageID 331.)  The appraisal valued the cost to repair the Association's roofs at $162,700.00.  (Doc. No. 20-3 at PageID 365.)  The appraisal further valued the replacement cost of the Association's roofs, for purposes of uniformity, at $227,200.00.  (*Id.*)  Though, notably, the appraisal made no finding that full roof replacements were necessary to achieve a uniform appearance.  State Farm has since paid the Association the cost to repair its damaged roofs in accordance with the binding appraisal award.  (Doc. No. 24 at PageID 417.)  However, State Farm continues to dispute coverage under the Policy for full roof replacements.  (*Id.*)

The Association filed Plaintiff's Motion on March 15, 2024.  (Doc. No. 20.)  State Farm filed Defendant State Farm Fire and Casualty Company's Memorandum in Opposition to Plaintiffs' Motion to Amend (Doc. No. 22) on March 29, 2024.  State Farm additionally submitted Defendant State Farm Fire and Casualty Company's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment (Doc. No. 24) on April 12, 2024.  The Association did not file a reply brief.

State Farm filed Defendant's Motion on March 22, 2024.  (Doc. No. 21.)  The Association filed its Response in opposition to Defendant's Motion on April 12, 2024 (Doc. No. 23), and State Farm filed its Reply on April 19, 2024 (Doc. No. 25).

Both Plaintiff's Motion and Defendant's Motion (collectively, the "Motions") are currently ripe for review and decision.

## II.     STANDARD OF REVIEW

### A. Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought" and that "[t]he court shall grant summary judgment if the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, affidavits or sworn declarations, and admissions on file, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* Fed. R. Civ. P. 56(a), (c).

The burden then shifts to the non-moving party, which "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). In opposing summary judgment, the nonmoving party cannot rest on its pleadings or merely reassert its previous allegations. *Id*. at 248-49. It also is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must "go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324.

A party's failure "to properly address another party's assertion of fact as required by Rule 56(c)" can result in the court "consider[ing] the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e). Additionally, "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

In ruling on a motion for summary judgment, it is not the judge's function to make credibility determinations, "weigh the evidence[,] and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 255. In

6

determining whether a genuine issue of material fact exists, the court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in that party's favor. *Id*. at 255; *Matsushita*, 475 U.S. at 587; *Tolan v. Cotton*, 572 U.S. 650, 660 (2014).  However, the "mere existence of a scintilla of evidence in support of the" nonmoving party is not sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252.  "There must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id*.  The inquiry, therefore, "asks whether reasonable jurors could find by a preponderance of the evidence that the" nonmoving party is entitled to a verdict. *Id*.  Where—as in the case at bar—parties have submitted cross-motions for summary judgment, "'the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *McKay v. Federspiel*, 823 F.3d 862, 866 (6th Cir. 2016) (quoting *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)).

When deciding on a matter of law, "[a] federal court sitting in diversity must apply the substantive law . . . of the state in which it sits." *Phelps v. McClellan*, 30 F.3d 658, 661 (6th Cir. 1994) (citing *Klaxon Co. v. Stenor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S. Ct. 1020, 1021-22 (1941)); *Clutter v. Johns-Manville Sales Corp.*, 646 F.2d 1151, 1153 (6th Cir. 1981).  To the extent that the state's highest court has not addressed the issue presented, the federal court must anticipate how the state's highest court would rule. *Imperial Hotels Corp. v. Dore*, 257 F.3d 615, 620 (6th Cir. 2001) (quoting *Bailey Farms, Inc. v. NOR-AM Chem. Co.*, 27 F.3d 188, 191 (6th Cir. 1994)).  Moreover, "[i]f the highest court has not spoken, the federal court must ascertain from all available data what the state law is and apply it." *Clutter*, 646 F.2d at 1153.

**B. Motion to Amend Complaint**

Federal Rule of Civil Procedure 15(a) requires that a party amend its pleading "only with the opposing party's written consent or the court's leave." The rule instructs that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("Rule 15(a) declares that leave to amend shall be freely given when justice so requires; this mandate is to be heeded") (internal quotation marks omitted). The Supreme Court has explained that, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman*, 371 U.S. at 182. "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Id.* Importantly, "[o]ne of the most important factor[s] to consider is the possibility of prejudice to the opposing party." *Asher v. Clay Cnty. Bd. of Educ.*, 585 F. Supp. 3d 947, 957 (E.D. Ky. 2022) (quoting *N. Am. Cath. Educ. Programming Found. v. Womble, Carlyle, Sandridge, & Rice, PPLC*, 887 F. Supp. 2d 78, 83 (D.D.C. 2012); also quoting *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 330-31 (1971)) (internal quotation marks omitted).

**III. ANALYSIS**

Broadly speaking, the Court must make two determinations in this matter. First, the Court must consider the Parties' requests for summary judgment. Second, the Court must address whether the Association should be permitted to amend its complaint to include allegations of bad faith. The Court will dispose of each issue in turn.

### A.  Cross-Motions for Summary Judgment

The Court turns first to the Parties' cross-motions for summary judgment.  In sum, the Parties disagree on whether the Policy provides coverage for full roof replacements on the Association's properties under the present circumstances.

### i.    Coverage Under the Policy

The Association argues that the Policy provides for repairs and/or replacements which result in a reasonably comparable appearance.  (Doc. No. 20-1 at PageID 353-57.)  In particular, the plain language of the Policy allegedly requires such coverage by stating, "State Farm will pay '(2) [t]he cost to replace on the described premises, the lost or damaged property with other property of *comparable material*, quality and for the same purpose.'".  (*Id.* at PageID 352-53 (quoting Doc. No. 10-2) (emphasis and alterations in original).)  In support, the Association points to an Ohio regulation which sets a minimum industry standard requiring insurers to provide coverage for replacement of as much of an insured's damaged property as necessary to result in a reasonably comparable appearance.  (*Id.* at PageID 355.)  Per Plaintiff's Motion, this would require State Farm to pay for full roof replacements on select Association buildings.  (Doc. Nos. 20-1 at PageID 347, 357; 20-3.)

By contrast, State Farm argues that the Policy only provides coverage for repairs and replacements with comparable material and remains silent about providing for a comparable appearance.  (Doc. No. 21 at PageID 384-88.)  State Farm also submits that the Association's repeated reliance on Ohio regulation is misplaced because the cited regulation—Ohio Admin. Code § 3901-1-54—is not applicable to a private cause of action.  (*Id.* at PageID 388.)

As a general matter, "[i]t is a long-standing principle of law that an insurance policy is a contract, and that the relationship between the insurer and the insured is purely contractual in nature." *Nationwide Mut. Ins. Co. v. Marsh*, 472 N.E.2d 1061, 1062 (Ohio 1984) (citing *Ohio Farmers Ins. Co. v. Cochran*, 135 N.E. 537 (Ohio 1922)). Courts interpret insurance contracts by "reasonably construing" the agreement based on the "ordinary and commonly understood meaning of the language employed." *Reinbolt v. Gloor*, 767 N.E.2d 1187, 1200 (Ohio Ct. App. 2001) (internal citations and quotation marks omitted). As with all contracts, a reviewing court must take care to not ascribe its own meaning to otherwise unambiguous terms of an insurance agreement. *Gomolka v. State Auto. Mut. Ins. Co.*, 436 N.E.2d 1347, 1348 (Ohio 1982); *see also Zinser v. Auto-Owners Ins. Co.*, 2017-Ohio-5668, at ¶ 13 (Ohio Ct. App. 2017) ("[a]n insurance policy is a contract; therefore, a reviewing court must interpret it in accordance with the rules of construction applicable to all other contracts"). "As a matter of law, a contract is unambiguous if it can be given a definite legal meaning." *Abboud v. Travelers Prop. Cas. Ins. Co.*, No. 1:20-cv-1523, 2022 U.S. Dist. LEXIS 32067, at *12, 2022 WL 541189, at *4 (N.D. Ohio Feb. 23, 2022) (quoting *Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256, 1261 (Ohio 2003)) (internal quotation marks omitted).

However, a reviewing court should "resort to construction" where the plain meaning of an insurance policy's terms "would lead to an absurd result." *Id.* (quoting *Travelers Indemn. Co. v. Reddick*, 308 N.E.2d 454, 456 (Ohio 1974)). What's more, where the terms of an insurance agreement are "susceptible to more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." *Reinbolt*, 767 N.E.2d at 1200 (quoting *King v. Nationwide Ins. Co.*, 519 N.E.2d 1380, 1383 (Ohio 1988)).

The contractual term currently at issue is "comparable material" and the Court finds Ohio Admin. Code § 3901-1-54 instructive. As the Parties are well aware, that Ohio regulation requires:

(1) If a fire and extended coverage insurance policy provides for the adjustment and settlement of first party losses based on replacement cost, the following shall apply:
. . .
> (b) When an interior or exterior loss requires replacement of an item and the replaced item does not match the quality, color or size of the item suffering the loss, the insurer shall replace as much of the item as to result in a *reasonably comparable appearance*.

Ohio Admin. Code § 3901-1-54(I)(1)(b) (*emphasis added*). Section 3901-1-54 does not establish a private cause of action. Ohio Admin Code § 3901-1-54(A). Though, the regulation does set forth minimum industry standards for insurance companies doing business in Ohio. *Id*. As such, Ohio Admin. Code § 3901-1-54 may constitute "evidence of industry practice relevant to construing an insurer's contractual obligations during the claims process." *Wright v. State Farm Fire & Cas. Co.*, 555 Fed. App'x. 575, at fn.1 (6th Cir. 2014) (citing *Dolecki v. Nationwide Mut. Ins. Co.*, 2005-Ohio-1061, at ¶ 21 (Ohio Ct. App. 2005)).

Here, the Court finds that the Policy does anticipate the replacement of as much of the Association's damaged property as necessary to result in a reasonably comparable appearance. In Ohio, this is the minimum industry standard, per Ohio Admin. Code § 3901-1-54. While the Court could not entertain a cause of action for violation of Section 3901-1-54, the regulation certainly gives a common meaning to the Policy's terms. Insureds such as the Association likely purchase insurance policies from insurers with the expectation that the insurer will comply with the State's minimum industry standards. Given this minimum industry standard, the Court finds that the term "comparable material," as used in the Policy, plainly refers to the replacement of as much of the Association's damaged roofs as is necessary to result in a reasonably comparable appearance.

Even if Section 3901-1-54 did not imbue the terms of the Policy with a plain meaning, failing to construe the terms of the Policy in accordance with minimum industry standards would lead to an absurd result. Under such a theory, insureds could no longer maintain a reasonable expectation that they have purchased a policy which complies with industry standards. As a result, basic mutual assent to the terms of a policy could be called into question in every insurance dispute.

Accordingly, the Policy in this action provides coverage for the replacement of as much of the Association's property as is necessary to result in a reasonably comparable appearance.

### ii. Reasonably Comparable Appearance

The Court must next determine whether the Association is entitled to full roof replacements as alleged. The Association operates on the assumption that the weathered gray replacement shingles identified by ITEL will not result in a reasonably comparable appearance if simply used to repair the damaged portions of the Association's roofs. (Doc. No. 20-1 at PageID 352-53.) Plaintiff's Motion argues that a binding appraisal already found the weathered gray shingles were not of a reasonably comparable appearance. (*Id.*) By this argument, if the Court determines the Policy provides coverage for a reasonably comparable appearance, State Farm cannot dispute that the coverage has been triggered here. (*Id.*)

Conversely, State Farm argues that the appraisal in this matter did not conclusively determine that full roof replacements were necessary to achieve a reasonably comparable appearance. (Doc. No. 21 at PageID 386.) To be clear, State Farm does not dispute the appraised cost of full roof replacements for the Association's properties. Instead, State Farm posits that the weathered gray shingles identified by ITEL are sufficiently comparable to the Association's current shingles. (*Id.* at PageID 387-88.) To this end, State Farm claims that the Association has

not and cannot produce any evidence that the shingles identified for repairs would not result in a reasonably comparable appearance.  (*Id.*)

Initially, the Court must discuss the appraisal award in this case.  Insurance appraisals serve to facilitate "'a plain, speedy, inexpensive, and just determination of the extent of the loss'" at issue.  *Saba v. Homeland Ins. Co. of Am.*, 112 N.E.2d 1, 3 (Ohio 1953) (quoting 45 C.J.S. Insurance § 1110).  Based on that sentiment, "[a] court's review of an appraisal is extremely limited." *Stuckman v. Westfield Ins. Co.*, 968 N.E.2d 1012, 1018 (Ohio Ct. App. 2011) (internal citations and quotation marks omitted).  "Generally, a court should not interfere with an appraisal award absent fraud, mistake, or misfeasance."  *Id.*  The appraisal conducted in the instant matter presents no indicia of fraud, mistake, or misfeasance.  Therefore, the Court will not modify the amount of replacement costs for full roof replacements on Association properties, as set forth in the appraisal.

Yet, while the appraisal conducted here sets amounts of loss, it does not conclusively establish that full roof replacements are necessary to result in a reasonably comparable appearance. The appraisal report does not state as much and, bluntly, that is not what the Court ordered when it compelled appraisal.  As previously stated, the Court ordered that the appraisal:

> [S]hould separately calculate and identify disputed costs—including damaged property as well as undamaged property whose replacement Plaintiff ***may*** claim ***if necessary*** for appearance purposes—so that the Court can either include or exclude them once it has determined whether the policy provides coverage for them.

(Doc. No. 11 at PageID 315 (***emphasis added***).)  The Court's permissive language clearly indicates that the appraisal itself was not meant to determine whether the Association is entitled to full roof replacement costs or whether such replacements are in fact necessary to achieve a reasonably comparable appearance.  The Court finds that the Parties' appraisal has no bearing on whether the Association's coverage for roof replacements which result in a reasonably comparable appearance has been triggered.

13

The Court will instead consider the Motions and evidence at hand, starting with Plaintiff's Motion.  The Association has not shown the absence of any genuine dispute of material fact here. With Plaintiff's Motion, the Association has included the appraisal report, several photographs of the weathered gray shingles identified by ITEL sitting alongside the Association's current shingles, and various court orders issued in unrelated insurance disputes.  (Doc. Nos. 20-3; 20-4; 20-6 – 20-9.)  The Association's photographs are currently the only probative evidence provided in Plaintiff's Motion to suggest that the identified replacement shingles will not result in a reasonably comparable appearance.  From the photographs, the weathered gray shingles do not appear to match the color of the Association's current shingles.  (Doc. No. 20-4 at PageID 366.)  Further, State Farm has offered no evidence that a more color appropriate shingle exists.[1]

However, State Farm has aptly argued that the Association's photographs depict a close-up view of its roof that is not characteristic of how the roof would regularly be seen.  (Doc. No. 24 at PageID 421.)  Indeed, viewing the photographs in the light most favorable to State Farm, the Court cannot say that the weathered gray replacement shingles shown will not result in a reasonably comparable appearance.  The Association has not actually installed the weathered gray shingles.  (*Id.*)  More importantly, it is currently impossible to accurately assess what appearance the weathered gray shingles would create from the ground, or from any angle that exceeds just several feet of distance from the Association's roof.  Additionally, the shingles identified for repairs are not so starkly incomparable to the current shingles that natural weathering of the replacement shingles could not result in a reasonably comparable appearance over time.  *See Wright*, 555 Fed. App'x. at 579 ("unweathered replacement [roofing], after a reasonable amount

---

[1] Although, the Association bears the burden of proof in this case, on a motion for summary judgment, the nonmoving party must "go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324.

of time, would weather to match the old [roofing]. The district court could reasonably conclude that this would 'result in a reasonably comparable appearance' and thereby satisfy the requirements of the Administrative Code [Section 3901-1-54]"). Thus, the Court finds the existence of clear disputes of material fact, in reviewing Plaintiff's Motion.

Turning now to Defendant's Motion, State Farm also cannot presently demonstrate the absence of a dispute as to material fact. In support of Defendant's Motion, State Farm points to the Association's lack of evidence. (*See* Doc. No. 21 at PageID 387.) Most pertinently, State Farm argues that the weathered gray replacement shingles are sufficiently comparable to the Association's current shingles to make repairs rather than full roof replacements. (*Id.*) State Farm again contends that the Association's photographs are not representative of what the Association's roofs might look like with the replacement shingles installed. (*Id.* at PageID 387-88.) Though, viewing the facts in the light most favorable to the Association, the Court presumes that the Association's photographs are characteristic of the color contrast between the replacement shingles and the current shingles. State Farm has provided no evidence suggesting that the replacement shingles will result in a reasonably comparable appearance one way or the other, despite the slight color difference between the replacement shingles and the Association's current shingles. Consequently, upon review of Defendant's Motion, the Court finds the existence of genuine disputes of material fact.

Ultimately, because there are genuine disputes of material fact regarding the Association's alleged entitlement to full roof replacements that result in a reasonably comparable appearance under the Policy, the Court **DENIES** both Motions in this respect.

### B. Motion to Amend the Complaint

Finally, the Court directs its attention to the Association's request for leave to amend its complaint. (*See* Doc. No. 20-1 at PageID 357-58.) The Association claims State Farm is arguing that the Policy violates Ohio Admin. Code § 3901-1-54 and that State Farm has failed to issue payment pursuant to a "binding appraisal." (*Id.* at PageID 358.) Moreover, the Association argues that State Farm has no reasonable justification for withholding payment of the appraised replacement cost in this case. (*Id.*)

The Court finds that allowing the Association leave to amend its complaint as requested would fundamentally and unduly prejudice State Farm. The Court has already held that the appraisal conducted in this action is not binding on whether the Association is entitled to full roof replacements under the Policy. And, to wit, Ohio Admin. Code § 3901-1-54 may not be considered as evidence of bad faith. *Brummitt v. Seeholzer*, 2019-Ohio-1555, at ¶ 31 (Ohio Ct. App. 2019) (quoting *Furr v. State Farm Mut. Auto. Ins. Co.*, 716 N.E.2d 250, 256 (Ohio Ct. App. 1998)). If the Association is permitted to amend its complaint, State Farm will be required to defend itself against inappropriate evidence for taking a reasonable position in the course of litigation. Accordingly, the Association is **DENIED** leave to amend its complaint at this time.

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS, IN PART, AND DENIES, IN PART,** Motion for Summary Judgment and to Amend the Complaint Plaintiff Requests Oral Argument (Doc. No. 20), and **DENIES** Defendant State Farm Fire and Casualty Company's Motion for Summary Judgment (Doc. No. 21), and finds as follows:

1. The Policy at issue provides coverage for the replacement of as much of the Association's damaged property as is necessary to result in a reasonably

comparable appearance and Plaintiff's Motion is **GRANTED** in this respect;

2. The Association has not demonstrated the absence of a genuine dispute of material fact regarding whether shingles identified for repair will not result in a reasonably comparable appearance and Plaintiff's Motion is **DENIED** in this respect;

3. Permitting the Association to amend its complaint to include allegations of bad faith would unduly prejudice State Farm as alleged, and therefore, Plaintiff is **DENIED** leave to amend its complaint;

4. The Association makes no substantive request for oral argument.[2]  To the extent the Association does request oral argument in this matter, that request is **DENIED**;

5. State Farm has not demonstrated the absence of a genuine dispute of material fact regarding whether the shingles identified for repair are sufficiently comparable to the Association's current shingles to result in a reasonably comparable appearance.  Therefore, Defendant's Motion is **DENIED** in its entirety; and,

6. Proceedings in this matter have been stayed pending the completion of a Court-ordered appraisal.  Such appraisal having been completed on January 4, 2024, the Court hereby **LIFTS** said **STAY** of proceedings, effective upon the issuance of this Order.

**DONE** and **ORDERED** in Dayton, Ohio, this Thursday, May 16, 2024.

s/Thomas M. Rose

_____

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

---

[2] Regardless, "[w]hether to grant or deny oral argument is left to the sound discretion of the trial court." *See e.g.*, *In re Huntington Bancshares Inc. v. Erisa Litig.*, 620 F. Supp. 2d 842, 857 (S.D. Ohio 2009).

17