UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| CINNAMON RIDGE CONDOMINIUM ASSOCIATION, INC., | : <br> : <br> : Case No. 3:22-cv-118 <br> : <br> : Judge Thomas M. Rose <br> : <br> : Magistrate Judge Peter B. Silvain, Jr. <br> : <br> : <br> : <br> : |
| Plaintiff, | |
| v. | |
| STATE FARM FIRE AND CASUALTY COMPANY, | |
| Defendant. | |

**ENTRY AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT (DOC. NO. 34), AND, GRANTING DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 37)[1]**

Presently, the Court is faced with Plaintiff Cinnamon Ridge Condominium Association, Inc.'s (the "Association") Motion for Summary Judgment (the "Association's Motion") (Doc. No. 34), as well as Defendant State Farm Fire and Casualty Company's Motion for Summary Judgment ("State Farm's Motion") (Doc. No. 37) (collectively, the "Motions"). In brief, this dispute revolves around the Association's entitlement to insurance proceeds for roof replacements under its insurance policy purchased through State Farm Fire and Casualty Company ("State Farm"). (*See* Doc. No. 1.) More pointedly, the Parties dispute what roof replacements are necessary for the Association's roofs to ultimately bear a reasonably comparable appearance to the Association's roofs before suffering wind-damage on May 10, 2020. (Doc. Nos. 10-2 at PageID 237; 35 at PageID 499; 37 at PageID 507.) The Association vies for an interpretation of the phrase "reasonably comparable appearance" that accounts for the view of its roofs from all angles,

---
[1] The Court takes pause to thank its judicial extern, Alec B. Cornelius, for his assistance in preparing this order.

1

"without limitation." (Doc. No. 35 at PageID 501.) State Farm contends that any determination of what roof replacements are necessary to result in a reasonably comparable appearance should be made from the ground level, or a line-of-sight point of view. (Doc. No. 37 at PageID 507.)

The Court finds State Farm to have the right of it here. Thus, as explained herein, the Court **GRANTS** State Farm's Motion, and, **DENIES** the Association's Motion.

I. **BACKGROUND**[2]

Briefly, the Association is a common interest community organization consisting of sixteen residential buildings which sustained roof damage resulting from a wind-related weather event occurring on May 10, 2020. (Doc. No. 10-2 at PageID 237.) The Association sought to recover for this damage under the terms of its insurance policy purchased from State Farm (the "Policy"). (*See id.*) State Farm agreed that the Policy covered the damage to the Association's roofs, but found that coverage for full roof replacements was not warranted, as the shingles proposed to repair the Association's roofs were sufficiently comparable to the shingles already atop the roofs. (*Id.* at PageID 237-38.)

Therein lies the dispute and, on May 5, 2022, the Association brought the instant action before this Court. The Court ordered the Parties to submit their dispute to an appraisal panel to determine the amount of the Association's loss under the Policy on February 15, 2023. (Doc. No. 12.) The appraisal panel then determined the amount of the Association's loss consistent with what repairs and replacements would be necessary to render the Association's roofs uniform. (Doc. No. 20-3 at PageID 365.) However, on review of the appraisal panel's award, the Court found that the Policy only covered full roof replacements to the extent necessary to result in a reasonably comparable appearance, rather than uniformity. (Doc. No. 26 at PageID 440.)

---

[2] For a comprehensive factual background, *see* Doc. No. 26 at PageID 430-33.

After finding that the Association's Policy covered roof replacements to the extent necessary to result in a reasonably comparable appearance, the Court sent this case back to the appraisal panel to clarify its previous determination in accordance with this standard. (Doc. No. 31 at PageID 489.) At the Parties' direction, the appraisal panel provided two distinct determinations of the Associations' losses along these lines. (Doc. No. 37-1 at PageID 518-19.) One determination awarded the Association $33,725.00 for roof replacements necessary to result in a reasonably comparable appearance when judged from a ground level or line-of-sight point of view. (*Id.*) The other awarded the Association $227,200.00 for roof replacements, contemplating the reasonably comparable appearance standard when judged from a roof top or aerial view. (*Id.*) Notably, the entire appraisal panel collectively opined "that Reasonably Comparable Appearance as it pertains to the roof coverings of the [Association's roofs] is most accurately determined from a ground-level or line-of-sight [*sic*] view." (*Id.* at PageID 520.)

Nevertheless, the Parties continue to dispute which view would appropriately reflect what roof replacements are necessary to result in a reasonably comparable appearance, and, they have submitted their current Motions accordingly. (Doc. Nos. 34, 37.) The Parties filed their Motions contemporaneously on December 30, 2024. (*Id.*) They then filed their respective responses on January 15, 2025. (Doc. Nos. 37, 38.) The Court did not allow reply briefing on this issue. (*See* Notation Order, 12/2/2024.) Therefore, the Parties' Motions are now ripe for review and decision.

II. **STANDARD OF REVIEW**

Rule 56 of the Federal Rules of Civil Procedure provides that "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought" and that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has

3

the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, affidavits or sworn declarations, and admissions on file, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* Fed. R. Civ. P. 56(a), (c).

The burden then shifts to the non-moving party, which "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). In opposing summary judgment, the nonmoving party cannot rest on its pleadings or merely reassert its previous allegations. *Id*. at 248-49. It also is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must "go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324.

A party's failure "to properly address another party's assertion of fact as required by Rule 56(c)" can result in the court "consider[ing] the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e). Additionally, "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

In ruling on a motion for summary judgment, it is not the judge's function to make credibility determinations, "weigh the evidence[,] and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 255. In determining whether a genuine issue of material fact exists, the court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in that party's favor. *Id*. at

4

255; *Matsushita*, 475 U.S. at 587; *Tolan v. Cotton*, 572 U.S. 650, 660 (2014). However, the "mere existence of a scintilla of evidence in support of the" nonmoving party is not sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252. "There must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id*. The inquiry, therefore, "asks whether reasonable jurors could find by a preponderance of the evidence that the" nonmoving party is entitled to a verdict. *Id*. Where—as in the case at bar—parties have submitted cross-motions for summary judgment, "'the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *McKay v. Federspiel*, 823 F.3d 862, 866 (6th Cir. 2016) (quoting *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)).

When deciding on a matter of law, "[a] federal court sitting in diversity must apply the substantive law . . . of the state in which it sits." *Phelps v. McClellan*, 30 F.3d 658, 661 (6th Cir. 1994) (citing *Klaxon Co. v. Stenor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)); *Clutter v. Johns-Manville Sales Corp.*, 646 F.2d 1151, 1153 (6th Cir. 1981). To the extent that the state's highest court has not addressed the issue presented, the federal court must anticipate how the state's highest court would rule. *Imperial Hotels Corp. v. Dore*, 257 F.3d 615, 620 (6th Cir. 2001) (quoting *Bailey Farms, Inc. v. NOR-AM Chem. Co.*, 27 F.3d 188, 191 (6th Cir. 1994)). Moreover, "[i]f the highest court has not spoken, the federal court must ascertain from all available data what the state law is and apply it." *Clutter*, 646 F.2d at 1153.

### III. ANALYSIS

#### A. Reasonably Comparable Appearance

The Parties' sole dispute at this juncture hinges on the perspective from which to judge what roof replacements will result in a reasonably comparable appearance. Predictably, the Association lobbies for an aerial perspective, without limitation or exception. (Doc. No. 35 at

PageID 500-01.)  By contrast, State Farm argues for a determination consistent with a line-of-sight point of view. (Doc. No. 37 at PageID 507.)

Pursuant to the minimum industry standard in Ohio:

> (1) If a fire and extended coverage insurance policy provides for the adjustment and settlement of first party losses based on replacement cost, the following shall apply:
> . . .
>> (b) When an interior or exterior loss requires replacement of an item and the replaced item does not match the quality, color or size of the item suffering the loss, the insurer shall replace as much of the item as to result in a **reasonably comparable appearance**.

Ohio Admin. Code § 3901-1-54(I)(1)(b) (**emphasis added**). Yet, the Ohio Administrative Code does not specifically define "reasonably comparable appearance." To that end, under Ohio law, "[t]erms that are undefined in a statute are accorded their common, everyday meaning." *Stewart v. Vivian*, 91 N.E.3d 716, 721 (Ohio 2017).

While Ohio courts have yet to clearly define the term, "reasonably comparable appearance," courts in other jurisdictions have ordinarily interpreted the standard to require similarity rather than identical uniformity. *See Cedar Bluff Townhome Condo. Ass'n. v. Am. Family Mut. Ins. Co.*, 857 N.W.2d 290, 294 (Minn. 2014) ("'comparable material and quality' requires something less than an identical color match, but a reasonable color match nonetheless"); *Republic Underwriters Ins. Co. v. Mex-Tex, Inc.*, 150 S.W.3d 423, 425 (Tex. 2004) (finding that "comparable material and quality" is less stringent than the term "identical."); *see also Farmers Auto. Ins. Ass'n. v. Union Pac. Ry. Co.*, 756 N.W.2d 461, 471 (Wis. Ct. App. 2008). The Court finds such a definition to be well grounded in the common everyday meaning of the term, "reasonably comparable appearance," and would define the regulatory standard to require as many repairs as necessary to achieve a result that is similar, but something less than identical, and, that is fair but not excessive.

In this case then, the Court finds that any determination of what repairs must be made to the Association's roofs to result in a reasonably comparable appearance is aptly made from a line-of-sight point of view.  To assess the Association's roofs from any angle, without limitation, is excessive on its face.  By such an unlimited approach, insureds like the Association would, as a minimum industry standard, be entitled to full roof replacements from their insurer if a patch of shingles on an otherwise typically unseen portion of a roof needed to be replaced with a slightly off-color shingle because the color difference could be noticed by a random unspecified drone camera.  In other words, it would require uniformity rather than comparability, and, would constitute the type of "extreme blanket rule" that courts have been cautioned against endorsing. *See Wright v. State Farm Fire & Cas. Co.*, 555 F. App'x. 575, 579 (6th Cir. 2014) (declining to apply Section 3901-1-54(I)(1)(b) of the Ohio Administrative Code in a way that would "create an extreme blanket rule" always requiring full replacement).

To be sure, the appraisal panel here would determine the amount of the Association's loss from a line-of-sight point of view, if left to their own devices.  (Doc. No. 37-1 at PageID 520.)  For all intents-and-purposes, the appraisal panel's findings are the only facts before the Court on summary judgment.  While the Court does not rely on the appraisal panel to define a legal term in this matter, their opinion is telling.  The appraisal panel initially determined the amount of the Association's loss based on what was needed to restore uniformity to the Association's roofs.  But, when faced with nothing more than the directive to determine the amount of roof replacements necessary to result in a reasonably comparable appearance, the entire appraisal panel agreed that the standard was most accurately applied from a line-of-sight perspective.  By this token, the unanimity of the appraisal panel's finding further indicates that the phrase, "reasonably

7

comparable appearance," most commonly means a reasonably comparable appearance when viewed from a line-of-sight perspective.

The Court should note that its rationale is narrowly tailored to the evidence in this case. As the Court indicated in its prior order, whether repairs to an insured's property will result in a reasonably comparable appearance can turn on any number of factors, such as viewing angle, regular wear-and-tear, the prospective effects of weathering, etc. (Doc. No. 26 at PageID 442.) Nonetheless, the facts at bar only call on the Court to consider the viewing angle of the Association's roofs.

In all, the Court finds that any assessment of the repairs necessary to provide the Association's roofs with a reasonably comparable appearance is best judged from a line-of-sight point of view. Accordingly, the Court **GRANTS** State Farm's Motion and **DENIES** the Association's Motion.

### B. Amount Owed to the Association

Given the language of the underlying Policy here, the Court must still attempt to determine the amount of damages payable to the Association. Generally, damages in civil cases "must be proven with certainty, but the amount may be reasonably estimated." *Tackle Constr. Grp., LLC v. Pedtke Enterprises, Inc.*, 113 N.E.3d 980, 986 (Ohio Ct. App. 2018) (internal quotation marks omitted). Though, "[d]amages are not uncertain because they cannot be calculated with absolute exactness. It is sufficient if a reasonable basis of computation is afforded, although the result be only approximate." *Id.* (citations and internal quotation marks omitted). Conducting cursory math, the Court reasonably estimates that, pursuant to the appraisal award, the Association is owed $196,425.00 under the Policy, with $33,725.00 being currently payable to result in a reasonably comparable appearance, as State Farm has already satisfied its obligation to the Association for direct physical loss. (Doc. No. 26 at PageID 433.)

The Policy dictates that State Farm will be liable for the appraised cost to replace the Association's damaged property or the amount that the Association actually spent to repair its property, whichever is less. (Doc. No. 10-2 at PageID 194.) By virtue of the Court's findings above, the appraisal panel determined the amount of the Association's loss pertaining to "reasonably comparable appearance" to be $33,725.00, and, the amount of the Association's loss pertaining to direct physical loss to be $162,700.00. (Doc. No. 37-1 at PageID 519.) To break this determination down, the Association was awarded an average of $10,168.75 per roof for direct physical damage to each of its sixteen buildings. Of the Association's four roofs assessed for reasonably comparable appearance concerns, only two require additional payment to result in a reasonably comparable appearance. (*Id.* at PageID 518-19.) One roof requires an additional $20,900.00 to result in a reasonably comparable appearance, while the other requires an additional $12,825.00 to result in a reasonably comparable appearance. (*Id.*) In sum, the appraised amount of the Association's loss, when accounting for the "reasonably comparable appearance" concerns of these two roofs, is $31,068.75 and $22,993.75, respectively. Meanwhile, State Farm has indicated—and, the Association does not deny—that the Association actually replaced each of its sixteen roofs for $599,048.00, at a price of $37,440.50 per roof. (Doc. No. 28 at PageID 459.)

It would then seem a reasonable estimate to conclude that the appraised value of the Association's loss is less than the amount the Association actually spent to repair its property. Under the Policy, this lesser amount constitutes State Farm's obligation. Hence, the Court finds the Association's damages in this action to be $196,425.00, with $33,725.00 being currently payable in consideration of the "reasonably comparable appearance" standard.

### IV. <u>CONCLUSION</u>

For the reasons stated above, the Court **GRANTS** Defendant State Farm Fire and Casualty

Company's Motion for Summary Judgment (Doc. No. 37), and, **DENIES** the Association's Motion for Summary Judgment (Doc. No. 34).  State Farm is **ORDERED** to pay the remainder of its obligation to the Association consistent with this Order, in the amount of $33,725.00.  This Order is dispositive of the instant action and the Clerk is hereby directed to **TERMINATE** this matter on the Court's docket.

**DONE** and **ORDERED** in Dayton, Ohio, this Thursday, February 13, 2025.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE